IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  14-cv-02006-REB-MJW

BRIANNA WALTERS,

Plaintiffs,

v.

S & F HOLDINGS LLC, dba "WILLOW RIDGE MANOR,"
GREGORY SARGOWICKI,
JASON SCHUH, and
STACIE SCHUH,

Defendants.

# RECOMMENDATION ON

### (1) PLAINTIFF'S MOTION TO AMEND (Docket No. 36),

### (2) DEFENDANTS S & F HOLDINGS LLC DBA WILLOW RIDGE MANOR AND GREGORY SARGOWICKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED.R.CIV.P. 12(B)(6) (Docket No. 16), and

### (3) JASON AND STACIE SCHUH'S JOINDER IN DEFENDANTS S & F HOLDINGS LLC DBA WILLOW RIDGE MANOR AND GREGORY SARGOWICKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED.R.CIV.P. 12(B)(6) (Docket No. 25)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case issued by Judge

Robert E. Blackburn on July 21, 2014 (Docket No. 3).

Plaintiff, Brianna Walters, alleges the following in her Second Amended Complaint

(Docket No. 35).[1]  On July 28, 2012, plaintiff was attending the wedding of defendants

---

[1] Plaintiff filed this amended pleading solely to remove the Doe defendants.

2

Jason and Stacie Schuh.  The wedding was at the "Willow Ridge Manor," which is owned by defendants S & F Holdings, LLC, and Gregory Sargowicki.  (hereinafter collectively referred to as "the Manor defendants").  Jason and Stacie Schuh were utilizing or leasing the premises from the Manor defendants.  Plaintiff was bitten by a rattlesnake and suffered severe, debilitating injuries.  The Manor defendants have admitted they knew rattlesnakes were on the property.  All defendants failed to warn and protect their business invitees and licensees properly of the danger of rattlesnakes as required under Colorado law.  Plaintiff incurred over $170,000 in medical specials due to her serious injuries and the substantial cost of medical treatment for rattlesnake bites.  In addition, her injuries impaired her ability to earn income, and she has and will lose wages due to her injuries.

In her first claim, plaintiff alleges negligence.  She was an invitee on the premises (owned by the Manor defendants and leased or otherwise rented by the Schuhs).  Her injury was caused by defendants' negligence and failure to warn of rattlesnakes. Defendants negligently allowed the dangerous conditions to exist, negligently failed to remedy the unreasonably dangerous conditions (rattlesnakes on the property), and negligently or willfully failed to warn plaintiff of the conditions despite the fact that defendants knew, or in the exercise of ordinary care, should have known of the conditions and that there was a likelihood of someone being seriously injured.  Defendants were also negligent in failing to protect and safeguard plaintiff from the unreasonably dangerous conditions, in failing to warn plaintiff of the unreasonably dangerous conditions, and in failing to establish and enforce adequate procedures and precautions to ensure that invitees and licensees were not injured.  In addition, agents, employees, and/or borrowed

3

servants of the defendants were negligent in failing to warn of the dangerous condition and protect the invitees and licensees. Defendants negligently failed to provide adequate manpower, equipment, training, and supervision to their agents, employees, and/or borrowed servants.

In her second claim, plaintiff alleges gross negligence. At the time of the incident, defendants willfully and wantonly operated a location with the purpose of hosting events for business without regard for the rights and safety of the patrons, unlike a person of ordinary prudence under the same or similar circumstances. Defendants willfully and wantonly failed to maintain a safe environment with properly implemented procedures or warn of the hazards on the property, without regard for the rights and safety of others. Defendants recklessly allowed plaintiff to be hurt with willful or wanton disregard for her safety and willfully and wantonly disregarded the known risks, without regard for the rights and safety of others. Defendants' conduct constitutes a reckless disregard for the rights of others and/or was the result of conscious indifference to the rights, welfare, and safety of others. Accordingly, defendants were grossly negligent, and such gross negligence was a proximate cause of plaintiff's damages.

The third claim is under the doctrine of respondeat superior; defendants are liable for the negligence of each other because the employees and/or agents of each defendant were acting in the course and scope of their employment with the defendants at all relevant times.

The fourth claim is under a theory of joint enterprise; defendants are liable for the negligence of each other because an express or implied agreement among defendant existed, a common purpose was to be carried out by defendants, a common pecuniary

interest in that purpose existed among the defendants, and an equal right to control the enterprise existed.

Now before the court for a report and recommendation are the following motions: (1) Plaintiff's Motion to Amend (Docket No. 36),[2] (2) Defendants S & F Holdings LLC DBA Willow Ridge Manor and Gregory Sargowicki's Motion to Dismiss for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 16), and (3) Jason and Stacie Schuh's Joinder in Defendants S & F Holdings LLC DBA Willow Ridge Manor and Gregory Sargowicki's Motion to Dismiss for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 25). Plaintiff filed a combined opposition to the motions to dismiss (Docket No. 28), and defendants filed replies (Docket Nos. 30 and 31). Defendants filed responses to the motion to amend (Docket Nos. 38 and 40), and plaintiff filed a reply (Docket No. 42). The court has carefully reviewed these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendations.

**Motion to Amend**

Plaintiff seeks to amend her pleading to include breach of contract claims and to add exemplary damages. She asserts that discovery has provided her with the contract between the defendants and defendants' deposition testimony, both of which she claims demonstrate she is an intended third-party beneficiary of the contract. Furthermore, she

---

[2]Plaintiff combined her motion to amend with a motion for partial summary judgment. The latter has not been referred to the undersigned for a report and recommendation.

asserts this new evidence also demonstrates that defendants engaged in willful and wanton conduct, which they realized as dangerous, but ignored these risks and acted recklessly without regard to the consequences, rights, and safety of others, including plaintiff, warranting exemplary damages.

The court finds the following with regard to plaintiff's motion to amend to include breach of contract claims. The motion to amend was filed on April 30, 2015, almost five months after the December 1, 2014, deadline for amendment of pleadings (see Scheduling Order, Docket No. 23 at 7; Docket No. 21 at 1). Since the motion was made after the deadline for amendment of pleadings, this court has applied the following analysis in deciding whether to allow the amendments:

> Where, as here, a motion to amend the pleadings . . . is filed after the scheduling order deadline, a "two-step analysis" is required. Once a scheduling order's deadline for amendment has passed, a movant must first demonstrate to the court that it has "good cause" for seeking modification of the scheduling deadline under Rule 16(b). If the movant satisfies Rule 16(b)'s "good cause" standard, it must then pass the requirements for amendment under Rule 15(a) . . . .
>
> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Pumpco, Inc. v. Schenker Int'l, Inc., 204 F.R.D. 667, 668 (D. Colo. 2001) (quotations and citations omitted). The second step is consideration of whether the plaintiff has satisfied the standard for amendment of pleadings required under Fed. R. Civ. P.

15(a):

> Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.

Id. at 669 (citation omitted). Based upon this standard, and substantially for the reasons stated in the responses to the motion to amend, this court recommends that the proposed amendments should not be permitted.

As the Schuh defendants correctly note, in the original Complaint, plaintiff plead that there was a lease between them and the Manor defendants. (See Docket No. 1, ¶ 9). Moreover, the Manor defendants disclosed the License Agreement to plaintiff as part of their initial disclosures on October 15, 2014. (See Defs.' Ex. A - Docket No. 38-1). Plaintiff thus had the information to form the basis for the breach of contract claims she seeks to add weeks before the deadline for amending pleadings, yet she waited until months after that deadline to file her motion to amend. The court, therefore, concludes that the plaintiff has not demonstrated good cause for seeking modification of the scheduling deadline to allow for the amendment adding breach of contract claims.

The court now turns to the motion to amend to add a claim for exemplary damages. As stated above, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Frank v. U.S.

7

West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)). An amendment is futile only if it would not survive a motion to dismiss. See Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004). "In ascertaining whether plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, and the allegations in the complaint must be accepted as true." Hendrickson v. Doyle, 2015 WL 2106225, at *2 (D. Colo. May 4, 2015). "Moreover, [a]ny ambiguities must be resolved in favor of plaintiff, giving [her] the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in [her] complaint." Id. (quotations omitted).

Pursuant to § 13-21-102, C.R.S., inclusion of a claim for exemplary damages is prohibited in the initial pleading and allowed only after the plaintiff establishes *prima facie* proof of a triable issue. § 13-21-102(1.5)(a), C.R.S. Furthermore, to plead exemplary damages, the circumstances under which the wrongful act must have been committed include fraud, malice, or willful and wanton conduct. § 13-21-102(1)(a), C.R.S. Colorado law defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b). "Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness." U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp., 192 P.3d 543, 549 (Colo. App. 2008). This standard has been interpreted as justifying exemplary damages when the act causing the injury was performed with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of her rights

as evidence of a wrongful motive. <u>Western Fire Truck, Inc. v. Emergency One, Inc.</u>, 134 P.3d 570, 578 (Colo. App. 2006). "The question of whether the evidence is sufficient to support an award of exemplary damages is one of law; whether such damages are ultimately awarded is one for the tier of fact." <u>Pizza v. Wolf Creek Ski Dev. Corp.</u>, 711 P.2d 671, 684 (Colo. 1985).

Here, plaintiff asserts she should be allowed to seek exemplary damages against all defendants. She notes that during depositions, the Schuh defendants admitted that they knew rattlesnakes were common in the foothills and that the wedding venue was in the foothills. Despite that knowledge, the bride and groom did not take any actions to protect their guests or warn them of rattlesnakes and did not inspect the property or the parking lot at night, even though their wedding would be at night. Plaintiff contends that this "wanton disregard of duties to their invitees and the dangers imposed to their invitees is reckless conduct, for which punitive damages should be allowed."

With regard to defendant Sargowicki, plaintiff notes that Sargowicki claims that he had no knowledge of snakes on the property but admitted that "I have to inform my clients that there's potential danger, absolutely." Furthermore, plaintiff notes that Sergeant Scott Smith, a firefighter who worked in the area, including the night plaintiff was bitten, stated that rattlesnakes are common in the area, that property owners would have to know that there are snakes in the area, that it would surprise him if the property owner was to say he had never seen a rattlesnake, that he has never gone a whole summer without seeing snakes, that he has fairly often seen rattlesnake skins on the road that wraps around the Willow ridge Manor, and that he cannot imagine being a property owner in area and not having seen snakes with a property that size. In addition, plaintiff notes that the parks

9

near the Willow Ridge Manor and even the restaurant across the street all warn of wildlife or rattlesnakes or both.  For example, Dinosaur Ridge has many warning signs through the park, and other businesses nearby, including the wedding venue and garden "Denver Botanic Gardens at Chatfield," The Meadows Golf Course, and Red Rock Ampitheatre and Park also warn of rattlesnakes.  Also, the town offices of Morrison Town have pamphlets warning about rattlesnakes.

Furthermore, plaintiff notes that Sargowicki manually turns on the parking lot lights but routinely does not do so until he feels people are leaving, which results in a dark parking lot for much of the time even though the danger of rattlesnakes exists. After Sergeant Smith arrived on the scene, he had to use his flashlight to be able to see the rattlesnake, which was coiled and appeared ready to strike.  Sargowicki berated Sergeant Smith for killing the snake.  Sargowicki believes when snakes are on his property, he should give them a chance to wander off, and he thought Sergeant Smith did something wrong by killing the snake.  Plaintiff contends that "[t]his callous disregard for his guests causes dangers, like the rattlesnake that bit Plaintiff, to exist on his property, and increases the danger to his guests."  (Docket No. 3 at 10).

Plaintiff asserts that she should be allowed to amend to seek punitive damages against all defendants because of the wanton disregard for the dangers of rattlesnakes to the invitees on the property.

This court, however, recommends that plaintiff not be permitted to amend her pleading to add exemplary damages.  With respect to the Schuhs, the court agrees with them the proposed claim for exemplary damages is frivolous and futile.  Plaintiff has offered nothing to suggest that the bride and groom did anything fraudulent, malicious,

purposefully, wantonly, or willfully dangerous. With respect to all of the defendants, there has been no showing of any evil intent, with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of hers rights as evidence of a wrongful motive. If anything, their alleged conduct is negligent, nothing more. The court finds that plaintiff has not met her burden of a triable issue of fact that would entitle her to request exemplary damages.

**Motions to Dismiss**

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the

11

pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations omitted). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the

12

remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Here, defendants correctly note that plaintiff has brought a number of claims which are based upon negligence (i.e., negligence, gross negligence, respondeat superior, joint enterprise) and/or the Premises Liability Act (hereinafter "PLA"), § 13-21-115, C.R.S. The court agrees with defendants that all negligence claims fail as a matter of law because the PLA is the exclusive remedy. See Carson v. Corrections Corp. of Am., 2011 WL 1656509, at *1 (D. Colo. May 3, 2011) (Blackburn, D.J.) (citing Lombard v. Colorado Outdoor Education Center, Inc., 187 P.3d 565, 574 (Colo. 2008); Vigil v. Franklin, 103 P.3d 322, 328 (Colo. 2004)); Engen v. Colorado Mills Mall Ltd. Partnership, 2010 WL 2025460, at *1 (D. Colo. May 20, 2010) (Blackburn, D.J.); Sweeney v. United Artists Theater Circuit, Inc., 119 P.3d 538, 540 (Colo. App. 2005). However, as all of the parties correctly note, the court is not bound by the formal designation given to a claim by the plaintiff; the factual allegations alone are what matter. See Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991). Plaintiff has alleged facts sufficient to assert a claim under the PLA.

The PLA sets forth when a "landowner" may be held liable for the condition of or activities conducted on its property. Henderson v. Master Klean Janitorial, Inc., 70 P.3d 612, 613 (Colo. App. 2003). Here, the Schuh defendants (the bride and groom) assert they did not have sufficient possessory interest in the Manor and were not responsible for creating the condition (the rattlesnake) that injured an entrant to qualify as a "landowner" under the PLA. That statute provides that for purposes of the section, "'landowner' includes, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities

13

conducted or circumstances existing on real property." § 13-21-115(1), C.R.S. Thus, "the term 'landowner' encompasses both (1) 'an authorized agent or a person in possession of real property'; and (2) 'a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.'" Jordan v. Panorama Orthopedics & Spine Center, PC, 346 P.3d 1035, 1041 (Colo. 2015) (quoting § 13-21-115(1)). These definitions are to be read in the disjunctive. Henderson, 70 P.3d at 614.

Here, for the purposes of their motion to dismiss, the Manor defendants state that they are presumed to be a "landowner" and that plaintiff is presumed to be an "invitee." The Schuhs, however, assert they were not a "landowner." They contend they were not in possession of the Manor; instead, they were "invitees," having contracted merely to have their wedding reception inside the Manor. They further contend that the "landowner" analysis then turns to the activity conducted and whether such activity caused plaintiff's injury. See Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215 (Colo. 2002). They assert that here there is no such causal connection between the wedding activities and the injury. The latter argument may be valid; plaintiff walked away from the wedding reception into the parking lot and was struck by a rattlesnake, wildlife that is indigenous to the surrounding wilderness. Furthermore, the Schuhs may be invitees of the Manor defendants. Nevertheless, the court finds that plaintiff has pled enough facts to state a claim to relief that is plausible on its face that the Schuhs were "landowners" in their relationship to the plaintiff for purposes of the PLA as a result of their having utilized or leased the premises from the other defendants. (See Second Am. Compl., Docket No. 35 at 2 ¶ 8). "With respect to the first statutory definition, . . . a person 'in possession of' land is one who occupies the land with intent to control it, although not necessarily to the

14

exclusion of all others." Jordan, 346 P.3d 1041 (citing Pierson, 48 P.3d at 1219-20).

Finally, defendants assert that with any negligence-based claim or premises liability claim, the threshold issue is whether the defendant owed a duty to the plaintiff and that under the doctrine of *ferae naturae,* no duty exists, under common law or the PLA, that requires a landowner to protect invitees against injuries inflicted by indigenous wildlife.  See Gamble v. Peyton, 182 S.W.3d 1(Tex. App. 2005); State of Bartee, 894 S.W.2d 34, 41 (Tex. App. 1994).  They contend that "[w]hether the law should impose a duty requires consideration of many factors including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." (Docket No. 16 at 7) (quoting University of Denver v. Whitlock, 744 P.2d 54, 57 (Colo. 1987)).  They assert that imposing a duty requiring a landowner in Colorado to protect invitees against injuries inflicted by indigenous wildlife would create an unreasonable, enormous, and onerous burden on landowners that would outweigh any social importance of protecting potential plaintiffs.  Defendants note that this appears to be an issue of first impression in Colorado.

Initially, on its face, such an argument sounds quite reasonable.  However, in making this argument, defendants are analyzing the issue under common law negligence, not the PLA.  Plaintiff correctly argues in her response that defendants' assertion runs awry of their previous assertion that the PLA is the exclusive remedy in this case and that defendants are improperly attempting to require both a common law duty and a statutory duty to prove negligence.  (Docket No 28. at 8-9).  Prior to the PLA, "[t]he court

15

determined the existence and scope of the duty as a matter of law, considering such factors as the risk involved, the foreseeability and likelihood of the injury, the social utility of the landowner's conduct, and the magnitude of the burden that would be placed on the landowner of guarding against the injury." Traynom v. Cinemark USA, Inc., 940 F. Supp.2d 1339, 1343 (D. Colo. 2013). "That changed [however] when the Colorado General Assembly enacted the [PLA], C.R.S. 13-21-115." Id. Now, the PLA defines the landowners' duty of care according to the injured person's status as either a trespasser, a licensee, or an invitee, which depends on the person's purpose for entering the landowner's property. See id.; Grizzell v. Hartman Enterprises, Inc., 68 P.3d 551, 552 (Colo. App. 2003). Thus, the court no longer determines the existence and scope of the defendants' duty to the plaintiff. See Traynom, 940 F. Supp.2d at 1343. See also Vigil, 103 P.3d at 328 ("The operational mechanism of the statute . . . demonstrates the General Assembly's intent to preempt common law tort duty analyses. At common law the existence of a duty was a question of law to be determined by the court. . . . Under the premises liability statute, the only issue of law to be determined by the court is the classification of the injured plaintiff; liability and damages are questions of fact to be determined by the finder of fact."). Instead, with regard to invitees,[3] the PLA provides in pertinent part that "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he

---

[3]The PLA defines an "invitee" as "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." § 13-21-115(5)(a), C.R.S.

actually knew and should have known." § 13-21-115(3)(c), C.R.S. With regard to licensees,[4] they may recover only for damages caused:

> (I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or
>
> (II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.

§ 13-21-115(3)(b), C.R.S.

Under the PLA, the issue of reasonableness and lack of due care giving rise to liability is an issue of fact for the jury. § 13-21-115(4), C.R.S. Defendants' motions to dismiss based on the doctrine of *farae naturae* thus should be denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Plaintiff's Motion to Amend (Docket No. 36) be **denied**. It is further

**RECOMMENDED** that Defendants S & F Holdings LLC DBA Willow Ridge Manor and Gregory Sargowicki's Motion to Dismiss for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 16) and Jason and Stacie Schuh's Joinder in Defendants S & F Holdings LLC DBA Willow Ridge Manor and Gregory Sargowicki's Motion to Dismiss for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 25) be **granted in part as follows**. It is recommended that the motions to dismiss be granted to the extent that all of the negligence claims be dismissed. It is, however, further

---

[4]The PLA defines a "licensee" as "a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. 'Licensee' includes a social guest." § 13-21-115(5)(b), C.R.S

17

recommended that the plaintiff be directed to file an amended pleading forthwith or within a specified number of days that sets forth solely a Premises Liability Act claim as set forth in this Report and Recommendation. Further, it is recommended that the motions to dismiss be denied in all other respects.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: July 13, 2015          s/ Michael J. Watanabe
      Denver, Colorado          Michael J. Watanabe
                                                 United States Magistrate Judge