IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  14-cv-02006-REB-MJW

BRIANNA WALTERS,

Plaintiffs,

v.

S & F HOLDINGS LLC, dba "WILLOW RIDGE MANOR,"
GREGORY SARGOWICKI,
JASON SCHUH, and
STACIE SCHUH,

Defendants.

---

**RECOMMENDATION ON
PLAINTIFF'S MOTION FOR SANCTIONS TO STRIKE DEFENDANTS [sic]
PLEADINGS AND APPEARANCES FOR PERJURY AND DISCOVERY ABUSE
(Docket No. 45)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case issued by Judge

Robert E. Blackburn on July 21, 2014 (Docket No. 3).

Plaintiff, Brianna Walters, alleges that on July 28, 2012, while attending the

wedding of defendants Jason and Stacie Schuh at the "Willow Ridge Manor," which is

owned by defendants S & F Holdings, LLC, and Gregory Sargowicki, she was bitten by a

rattlesnake in the parking lot and suffered severe, debilitating injuries.

Now before the court for a report and recommendation is the Plaintiff's Motion for

Sanctions to Strike Defendants [sic] Pleadings and Appearances for Perjury and

Discovery Abuse (Docket No. 45) to which defendants S & F Holdings, LLC, and Gregory

Sargowicki filed a Response (Docket No. 49). The court has carefully considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed, makes the following findings, conclusions, and recommendation that substantially for the reasons stated in the Response (Docket No. 49), the motion should be denied.

In her motion, plaintiff seeks sanctions in the form of striking the pleadings and appearances of defendants Sargowicki and S & F Holdings, attorney fees, expert witness fees and expenses, and being allowed an additional (unrebutted) expert witness, asserting the following. She requested production of documents from Sargowicki on January 30, 2015 (Pl.'s Ex. 8, Docket No. 45-8). Initially he was willing to allow plaintiff to make copies before the deposition but later changed his mind and decided to make a copy himself and give it to plaintiff. The approximately 5,000 pages of leases/contracts were produced the day after Sargowicki's deposition had been completed, on March 20, 2015.

In sworn testimony, Sargowicki stated six times that he had never seen any snakes at Willow Ridge Manor. Plaintiff's counsel and counsel's staff then began calling the individuals named in the 5,000 pages of leases/contracts in an attempt to corroborate Sargowicki's statements. "Buried within the two banker boxes full of about 5,000 sheets of paper, was the contract between Willow Ridge Manor and Cecilia Suderman. Cecilia's wedding was held just twelve days before [plaintiff] was bitten at Willow Ridge Manor . . . ." (Docket No. 45 at 2, ¶ 4).

On July 16, 2012, Cecilia found a snake on Willow Ridge Manor and immediately

alerted Sargowicki because she was concerned it would bite her guests. Cecilia's photographer took photos of Sargowicki using his "special snake tool" to move the snake toward a parking lot at Willow Ridge Manor. A copy of those photographs are attached the to motion (Docket No. 45-3). "His possession of this tool is proof that he knew he had dangerous, poisonous snakes on his property. Regardless of this knowledge, Sargowicki continued renting his premises for profit, thereby exposing his guests, and [plaintiff], to known, lethal harm." (Docket No. 45 at 2, ¶ 5). "As is absolutely clear from these photos, Sargowicki had seen, and even handled a snake on his property just twelve days prior to Brianna being bitten. This contradicts his unequivocal, unreserved, and oft-repeated testimony that he had never seen or encountered any snake on his property before." (Docket No. 45 at 3, ¶ 6). "Sargowicki has lied about material facts which go to the very heart of this case: whether Sargowicki knew or should have known of the danger of snakes on his property, Willow Ridge Manor. The integrity of the judicial system has been harmed by his lies. Sargowicki has furthermore wasted Plaintiff's time in discovery and misled this Court as a result of his deceptions." (Docket No. 45 at 3, ¶ 7). Plaintiff details the six purported lies - once in an interrogatory response and five times in his deposition.

Plaintiff reviews the five factors in Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992), which she asserts establish that the pleadings of Sargowicki and S & F Holdings should be stricken. "Before choosing dismissal [or default judgment] as a just sanction, a court should ordinarily consider a number of factors, including: '(1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant,' . . . (4) whether the court warned

4

the party in advance that dismissal of the action [or default judgment] would be a likely sanction for noncompliance . . . and (5) the efficacy of lesser sanctions." Id. at 921. She asserts that "Sargowicki's pattern of lies and burying evidence has prejudiced Plaintiff in that she now must corroborate every statement made by Sargowicki . . . . Plaintiff's attorney and his staff have spent many hours attempting to corroborate his testimony." (Docket No. 45 at 6, ¶ 20). Moreover, she claims, she "was prejudiced by being unable to depose Sargowicki regarding these documents. Sargowicki produced the documents only after Sargowicki's deposition . . . . Plaintiff requested production of documents from Sargowicki on January 30, 2015 . . . . The day after Sargowicki's deposition had been completed, on March 20, 2015, Sargowicki finally disclosed approximately 5,000 pages of leases/contracts . . . . The crucial evidence in this case was buried within." (Docket No. 45 at 7, ¶ 22).

In addition, plaintiff claims that she "has been prejudiced by electing to use her one allowed expert witness to help establish Sargowicki's knowledge, when she could have used the expert to help establish the standard of care or damages. This factor weighs heavily in favor of striking Sargowicki's pleadings." (Docket No. 45 at 7, ¶ 23). Also, plaintiff asserts that Sargowicki's lies have substantially interfered with the judicial process, claiming that his "six lies (that have been discovered to date), which go to the essence of the case, and his burying of the evidence, have affected all aspects of this litigation and have interfered with Plaintiff's pursuit of justice." (Docket No. 45 at 7-7, ¶ 25). In addition, plaintiff claims Sargowicki was warned at least twice of the potential sanctions due to any perjury, presumptively in addition to being prepared by his lawyer,

5

noting that he was given the oath by the court reporter and that "Gregory Wilder [plaintiff's attorney] gave Sargowicki a lengthy admonition to tell the truth and that any misrepresentation would carry with it the same penalties of perjury and misrepresentation as if he had been in court . . . ." (Docket No. 45 at 9, ¶ 30).[1] Finally, plaintiff claims that "on April 30, 2015, Sargowicki threatened to seek sanctions against Plaintiff for an alleged misrepresentation (which was unfounded)[2] . . . . Thus, the Court can rest assured that Sargowicki was aware of the sanctions available for misrepresentations." (Docket No. 45 at 9, ¶ 30).

In addition to striking their appearance and pleadings "due to perjury, discovery abuses, and burying of evidence" and the entry of a default judgment against them, plaintiff asserts that additional sanctions should be granted against Sargowicki. Plaintiff claims that Sargowicki refused to stipulate to facts that would have prevented the need for plaintiff's attorney and his staff to spend many hours calling people related to the two

---

[1]Plaintiff's counsel's "lengthy admonition" at the deposition was as follows:

> Let me explain a little bit about depositions. A deposition is an opportunity for me, as the attorney for Brianna Walters, to ask you questions under oath. The oath that you just gave was — that you took was the exact same as if you were in court. The same thing would be asked of you if you're in front of a judge or a jury. It carries with it the same penalties of perjury, misrepresentation. And I need you to understand that the oath is the same. Do you understand that?

(Docket No. 45-2 at 5, Sargowicki Trans. at 7, Lines 1-10).

[2]It was defense counsel, not his client Sargowicki, who mentioned to plaintiff's counsel the possibility of seeking sanctions. (See Docket No. 45-10 at 3).

banker's boxes of license agreements and drafting this motion.[3]  In addition, plaintiff asserts that her attorney and his staff still need to go through thousands more of the documents produced by Sargowicki to corroborate Sargowicki's statements under oath. Plaintiff requests an award of attorneys' fees for the efforts required because of Sargowicki's lies.

Plaintiff also requests that the court allow punitive damages against Sargowicki and S & F Holdings "for their perjury, discovery abuse, bad faith conduct, and reckless disregard of his guests." (Docket No. 45 at 11, ¶ 39).  Plaintiff contends that "[t]he attached evidence further supports Plaintiff's Motion to Amend to add punitive damages because the photo and testimony in Exhibit 3 shows Sargowicki has willfully and wantonly caused lethal dangers to remain on his property (Ex. 3).  Indeed, given the opportunity to remove the snake from his own property or to destroy it, he simply moved it to a parking lot, which is reckless and willful conduct (Ex. 3).  The photo shows that Sargowicki had

---

[3] Plaintiff has provided a copy of her attorney's e-mail in which he lists the stipulations he proposed as an alternative to the production of the leases.  He stated in pertinent part:

> Alternatively, I feel confident that the leases and contact with the lessees will show the following points, that I would ask you to stipulate to:
>
> (1) Gregory Sargowicki and Willow Ridge Manor ("Willow Ridge") knew of the danger of rattlesnakes being frequently at 4903 Willow Springs Rd, Morrison, CO 80465 ("the premises").
>
> (2) Willow Ridge has had rattlesnakes present at events prior to July 2012.
>
> . . .

(Docket No. 45-4 at 3).  As noted in the text below, however, plaintiff has not established that the small snake in the photo was a rattlesnake.

actual knowledge of snakes that could bite people (Ex. 3).  His refusal to warn his guests about the dangerous snakes or even to continue to operate without taking any safety measures shows how he puts profits ahead of the safety of his guests." (Docket No. 45 at 11, ¶ 39).

In addition, plaintiff contends that Sargowicki's lies caused her to use her one expert that was allowed by this court to prove Sargowicki's knowledge, which has cost plaintiff $2,000 and will cost an additional $500 per hour for in-court appearance, plus travel expenses.  Plaintiff requests that her expert's past and future fees be paid for by Sargowicki and that plaintiff be allowed an additional, unrebutted expert at trial.

The court, however, agrees with defendants that the plaintiff's motion is short on an actual factual basis, and the court finds that sanctions are not warranted.  Plaintiff's motion assumes, but does not establish, that the photographs show that Sargowicki was moving a rattlesnake or other harmful snake.  It is not apparent from the photos of the small snake, however, what type of snake it is.  Furthermore, plaintiff has made no showing that the tool used by Sargowicki to move the small snake was in fact a "special snake tool" which she claims is "proof that he knew he had dangerous, poisonous snakes on his property."  The tool appears to this court to be merely some sort of extension pole which could be possessed for any number of purposes.

In addition, regarding the purported "lies," the court is swayed by defendants' assertions that plaintiff has failed to give the context of Sargowicki's responses; the purported "lies" appear to be in the context of Sargowicki being repeatedly questioned about rattlesnakes specifically, not snakes in the generic sense.  Defendants assert that during Sargowicki's deposition, there were 61 reference to rattlesnakes, and he believed

8

based on the pattern of questioning that his references to snakes were interchangeable with rattlesnakes because that is how the questions were phrased. Defendants assert that three responses that use the word "snake" do not constitute a basis for granting plaintiff's request for draconian relief. Defendants contend that "Plaintiff seeks to make the poverbial molehill into a mountain with hyperbolic assertions that three perhaps inartful statements by an exasperated witness are such grave threats to the very foundations of American jurisprudence that the only remedy is the 'nuclear option.' It has long been the law that witnesses can be impeached by showing a prior inconsistent statement. . . . Plaintiff is free to impeach Mr. Sargowicki at trial. However Plaintiff's requested remedy is vastly out of proportion to the perceived wrong." (Docket No. 49 at 4, ¶ 8). This court agrees. Plaintiff is free to cross-examine Sargowicki at trial; no sanctions are warranted based on what has been presented here.

Also, the court finds that there has been no showing that defendants "buried" any evidence in the documents produced. Defense counsel notes that plaintiff requested license agreements for the preceding five years, and he asserts that the request was a classic "fishing expedition," but he nevertheless agreed to produce the documents so as to avoid a discovery battle. Defense counsel states that he discussed both the cost of producing the large volume of documents and the logistics of producing them with plaintiff's counsel, who is located in Utah. These discussions are reflected in e-mails attached by plaintiff as exhibits to the instant motion. (See Docket No. 45-4). Counsel agreed that plaintiff's counsel could pick up copies of the documents during the week of March 15, 2015, when he would be in Denver for depositions. He picked them up on his way to Denver International Airport. Defense counsel asserts that at no time did plaintiff

state she required the license agreements prior to Sargowicki's deposition. As defense counsel notes, the large volume of documents plaintiff complains of is the result of her own Request for Production. Furthermore, plaintiff waited four months to raise a concern over the documentation. Based on the above, this court finds that an award of attorney fees for going through those documents and calling any or all of the prior customers are not warranted.

Furthermore, regarding plaintiff's alleged prejudice in using her one and only allowed expert to dispel Sargowicki's purported "lies," defendants indicate that plaintiff had already served her expert disclosure on January 30, 2015,[4] which was well before Sargowicki's deposition on March 19, 2015, and the same day she served her written discovery. At the Scheduling Conference, the parties were permitted one expert per side, and plaintiff has never moved to endorse any additional experts. The court finds that plaintiff has not established any basis for her to designate an additional, and unrebutted, expert at this late date.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Plaintiff's Motion for Sanctions to Strike Defendants [sic] Pleadings and Appearances for Perjury and Discovery Abuse (Docket No. 45) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge**

---

[4]The deadline for designating all experts and providing all information provided in Fed. R. Civ. P. 26(a)(2) was January 30, 2015. (Scheduling Order, Docket No. 23 at 8).

**assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: July 29, 2015            s/ Michael J. Watanabe
      Denver, Colorado        Michael J. Watanabe
                                        United States Magistrate Judge